Eastern District of Kentucky
**FILED**
NOV - 5 2015
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## FRANKFORT

UNITED STATES OF AMERICA

V.                                     INDICTMENT NO. 3:15-CR-14-GFVT

ROBERT L. BERTRAM, JR., M.D.,
JAMES W. BOTTOM,
ROBIN G. PEAVLER, M.D.,
BRIAN C. WALTERS, and
BRYAN S. WOOD, M.D.

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

### BACKGROUND

*Relevant Entities*

1. At all relevant times, SelfRefind was the assumed name of Addixxion Recovery of Kentucky, LLC, a chain of substance abuse treatment clinics headquartered in Danville, Kentucky, and owned by defendants **ROBIN G. PEAVLER, M.D.** and **BRYAN S. WOOD, M.D.** (hereinafter "SelfRefind").

2. At all relevant times, PremierTox, Inc. was a clinical laboratory located in Russell Springs, Kentucky (hereinafter "PremierTox"). PremierTox performed urine drug testing. PremierTox was formed on September 15, 2010 and owned by defendants **JAMES W. BOTTOM** and **BRIAN C. WALTERS**. On December 27, 2010, defendants **ROBERT L. BERTRAM, JR., M.D., JAMES W. BOTTOM, ROBIN G.**

**PEAVLER, M.D., BRIAN C. WALTERS,** and **BRYAN S. WOOD, M.D.** executed an agreement whereby they agreed to operate, own and maintain PremierTox, and equally share the profits and losses.

3. At all relevant times, Liberty Billing, LLC was a billing company located in Franklin County, Kentucky (hereinafter "Liberty Billing"). Liberty Billing submitted all claims for payment for PremierTox.

4. At all relevant times, Medicare was a health care benefit program affecting commerce, under which medical benefits, items and services were provided to individuals. 18 U.S.C. § 24(b).

5. At all relevant times, Medicaid was a health care benefit program affecting commerce, under which medical benefits, items and services were provided to individuals. 18 U.S.C. § 24(b). Medicaid was jointly funded by the Commonwealth of Kentucky and the federal government. Claims for payment for Medicaid beneficiaries were sent to the fiscal agent for the Kentucky Medicaid Management Information System in Franklin County, Kentucky.

6. At all relevant times, Anthem BlueCross BlueShield (hereinafter "Anthem") was a health care benefit program affecting commerce, under which medical benefits, items and services were provided to individuals. 18 U.S.C. § 24(b). Anthem was headquartered in Indianapolis, Indiana.

7. At all relevant times, Bluegrass Family Health was a health care benefit program affecting commerce, under which medical benefits, items and services were

provided to individuals. 18 U.S.C. § 24(b). Bluegrass Family Health was headquartered in Lexington, Kentucky.

8. The Centers for Medicare & Medicaid Services ("CMS") was a federal agency within the United States Department of Health and Human Services and was responsible for administering the Medicare and Medicaid programs. CMS had the authority to make coverage and medical necessity determinations.

### Provider Agreements and Policies

9. At all relevant times, Medicare, Medicaid, Anthem, and Bluegrass Family Health would only pay for treatment and services, such as laboratory tests and prescription drugs, which were considered medically necessary, performed within accepted medical standards, and were rendered for a legitimate medical purpose. Medicare, Medicaid, Anthem, and Bluegrass Family Health prohibited payment for items and services that were not "reasonable and necessary" for the diagnosis and treatment of an illness or injury.

10. At all relevant times, PremierTox was a participating provider for Medicare, Medicaid, Anthem, and Bluegrass Family Health.

### Urine Drug Testing

11. Urine drug testing was useful in the clinical setting because it provided objective information to assist the provider in diagnosing and making treatment decisions. In treating patients for substance abuse, clinicians used qualitative and quantitative urine drug testing to look for the presence or absence of drugs in the body.

12. Qualitative drug testing was generally used to determine the presence or absence of a drug or drug metabolite in the sample. The test result was expressed in non-numerical terms, with a negative or positive result.

13. Quantitative drug testing was generally used when it was medically necessary to determine a specific quantity of drug or drug metabolite present in the sample. The test result was expressed in numerical terms.

14. Providers were to carefully consider the drugs or drug classes to be tested, and were to tailor all testing to the individual patient under consideration.

15. Medicare, Medicaid, Anthem, and Bluegrass Family Health required that the physician who ordered the urine drug test use the results of the test in his or her treatment of the patient in order for the test to be considered "medically necessary."

*The Defendants' Scheme to Defraud*

16. **ROBIN G. PEAVLER, M.D.** and **BRYAN S. WOOD, M.D.** owned and operated SelfRefind, which provided addiction treatment services to patients throughout Kentucky. As part of its treatment program, SelfRefind required patients to provide urine samples for qualitative urine drug screens that would determine whether various drugs were in their system.

17. On or about September 15, 2010, **JAMES W. BOTTOM** and **BRIAN C. WALTERS** formed PremierTox. On or about December 27, 2010, **ROBERT L. BERTRAM, JR., M.D., JAMES W. BOTTOM, ROBIN G. PEAVLER, M.D.,**

**BRIAN C. WALTERS**, and **BRYAN S. WOOD, M.D.** mutually agreed to operate, own, and maintain PremierTox, and equally share the company's profits and losses.

18. In or about October 2010, **ROBIN G. PEAVLER, M.D.** and **BRYAN S. WOOD, M.D.** began referring all urine samples from patients at SelfRefind to PremierTox for a quantitative confirmation test, regardless of the results of the qualitative drug screens. This policy was implemented by modification of the physician's examination form, which pre-checked the "order" for quantitative urine drug testing.

19. In or about December 2010, **ROBERT L. BERTRAM, JR., M.D., JAMES W. BOTTOM, ROBIN G. PEAVLER, M.D., BRIAN C. WALTERS**, and **BRYAN S. WOOD, M.D.** agreed to collect the urine samples at PremierTox with the knowledge that PremierTox was not yet able to perform the tests "ordered" by SelfRefind physicians. With the owners' knowledge, thousands of urine samples were transported from SelfRefind and stored in freezers at PremierTox until the machines at PremierTox were functioning.

20. In or about April 2011, PremierTox began performing quantitative drug tests. PremierTox employees prioritized the testing of fresh urine samples (also known as "hots"), and tested the SelfRefind samples from the freezer as capacity allowed. After the samples were tested, PremierTox, through its billing company, Liberty Billing, submitted claims to Medicare, Medicaid, Anthem, Bluegrass Family Health, and other private payors, for payment for the quantitative drug tests.

21. PremierTox performed quantitative drug tests on the frozen SelfRefind samples between in or about April 2011 and October 2011. Over a thousand of these samples were tested months after they had been collected, and, in the intervening time, more recent samples had been collected and tested. The delayed confirmation tests of the frozen samples were medically unnecessary at the time PremierTox performed the tests and submitted claims for such tests to Medicare, Medicaid, and other private payors.

22. PremierTox billed Medicare, Medicaid, Anthem, Bluegrass Family Health, and other private health plans up to $1,800 for each quantitative drug test panel. Medicaid would pay approximately $1,100 per panel; Medicare would pay approximately $600 per panel; and the private health plans would pay approximately $300 per panel.

23. Between April 2011 and October 2011, **ROBERT L. BERTRAM, JR., M.D., JAMES W. BOTTOM, ROBIN G. PEAVLER, M.D., BRIAN C. WALTERS**, and **BRYAN S. WOOD, M.D.** each received $600,000 in owner distributions from PremierTox. On or about August 2, 2011, they also purchased, with company funds derived from the proceeds of their scheme to defraud, a condo in Colorado for $2,000,000. The condo was transferred to PremierTox Properties, LLC, headquartered in Danville, Kentucky, and owned by **ROBERT L. BERTRAM, JR., M.D., JAMES W. BOTTOM, ROBIN G. PEAVLER, M.D., and BRIAN C. WALTERS**.

### COUNT 1
### 18 U.S.C. § 1349

24. The Grand Jury incorporates by reference Paragraphs 1 through 23 as if fully restated and alleged herein.

25. From on or about an exact date unknown but at least October 28, 2010 and continuing through on or about October 23, 2011, in Franklin County, and elsewhere in the Eastern District of Kentucky,

**ROBERT L. BERTRAM, JR., M.D.,**
**JAMES W. BOTTOM,**
**ROBIN G. PEAVLER, M.D.,**
**BRIAN C. WALTERS, and**
**BRYAN S. WOOD, M.D.,**

did knowingly and willfully, with the intent to further the objects of the conspiracy, combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury to commit certain offenses against the United States, namely, to knowingly and willfully execute the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, Anthem, Bluegrass Family Health, and other private health plans, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

26. It was a purpose of the conspiracy for the defendants to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare, Medicaid, and private health plans, for services that were medically unnecessary and that were not

eligible for reimbursement, and (b) diverting proceeds of the fraud for the personal use and benefit of the defendants.

### Manner and Means

27. The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among others, the following: on or about an exact date unknown but at least October 28, 2010 and continuing through on or about October 23, 2011, **ROBERT L. BERTRAM, JR., M.D., JAMES W. BOTTOM, ROBIN G. PEAVLER, M.D., BRIAN C. WALTERS, and BRYAN S. WOOD, M.D.**, submitted and caused to be submitted to Medicare, Medicaid, Anthem, Bluegrass Family Health, and other private health plans, claims for services, specifically, for urine drug tests that were not medically indicated or necessary to those beneficiaries, and the results of which were not used in directing the care of the patient.

All in violation of 18 U.S.C. § 1349.

### COUNTS 2-100
### 18 U.S.C. § 1347
### 18 U.S.C. § 2

28. The Grand Jury incorporates by reference Paragraphs 1 through 23 as if fully restated and alleged herein.

29. On or about the dates enumerated below, in Franklin County, and elsewhere in the Eastern District of Kentucky,

**ROBERT L. BERTRAM, JR., M.D.,**
**JAMES W. BOTTOM,**
**ROBIN G. PEAVLER, M.D.,**
**BRIAN C. WALTERS, and**
**BRYAN S. WOOD, M.D.,**

aided and abetted by one another and others known and unknown to the Grand Jury, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, Anthem, Bluegrass Family Health, and other private health plans, in connection with the delivery of and payment for health care benefits, items, and services, by causing the submission to Medicare, Medicaid, Anthem, Bluegrass Family Health, and other private health plans, of materially false and fraudulent claims for services, specifically, for urine drug screens that were not medically indicated or necessary to those beneficiaries, and the results of which were not used in directing the care of the patient:

| Count | Date Collected | Date Tested | Beneficiary | Payor |
|---|---|---|---|---|
| 2 | 1/19/2011 | 8/10/2011 | A.A. | Medicaid |
| 3 | 3/12/2011 | 6/9/2011 | A.A. | Medicaid |
| 4 | 3/25/2011 | 5/22/2011 | A.A. | Medicaid |
| 5 | 3/2/2011 | 6/12/2011 | B.B. | Medicaid |
| 6 | 4/4/2011 | 6/3/2011 | B.B. | Medicaid |
| 7 | 12/13/2010 | 9/4/2011 | C.B. | Anthem |
| 8 | 1/13/2011 | 9/25/2011 | C.B. | Anthem |
| 9 | 4/14/2011 | 8/24/2011 | C.B. | Anthem |
| 10 | 5/13/2011 | 8/16/2011 | C.B. | Anthem |
| 11 | 12/29/2010 | 9/4/2011 | G.B. | Bluegrass |

| | | | | |
|---|---|---|---|---|
| 12 | 1/15/2011 | 8/11/2011 | G.B. | Bluegrass |
| 13 | 2/2/2011 | 8/7/2011 | G.B. | Bluegrass |
| 14 | 2/19/2011 | 7/6/2011 | G.B. | Bluegrass |
| 15 | 3/2/2011 | 6/17/2011 | G.B. | Bluegrass |
| 16 | 4/16/2011 | 7/7/2011 | G.B. | Bluegrass |
| 17 | 12/17/2010 | 9/28/2011 | C.B. | Medicaid |
| 18 | 3/15/2011 | 6/17/2011 | C.B. | Medicaid |
| 19 | 4/19/2011 | 6/6/2011 | C.B. | Medicaid |
| 20 | 5/5/2011 | 6/12/2011 | C.B. | Medicaid |
| 21 | 1/22/2011 | 8/7/2011 | R.C. | Medicaid/Medicare |
| 22 | 2/21/2011 | 7/4/2011 | R.C. | Medicaid/Medicare |
| 23 | 3/7/2011 | 5/30/2011 | R.C. | Medicaid |
| 24 | 3/21/2011 | 5/22/2011 | R.C. | Medicaid |
| 25 | 1/14/2011 | 9/7/2011 | G.D. | Anthem |
| 26 | 1/29/2011 | 9/1/2011 | G.D. | Anthem |
| 27 | 3/11/2011 | 8/25/2011 | G.D. | Anthem |
| 28 | 3/26/2011 | 9/30/2011 | G.D. | Anthem |
| 29 | 4/23/2011 | 8/24/2011 | G.D. | Anthem |
| 30 | 12/16/2010 | 6/14/2011 | B.H. | Medicaid |
| 31 | 1/20/2011 | 8/11/2011 | B.H. | Medicaid |
| 32 | 2/17/2011 | 6/17/2011 | B.H. | Medicaid |
| 33 | 3/2/2011 | 6/11/2011 | B.H. | Medicaid |
| 34 | 3/17/2011 | 5/25/2011 | B.H. | Medicaid |
| 35 | 3/14/2011 | 8/23/2011 | J.H. | Anthem |
| 36 | 3/29/2011 | 8/18/2011 | J.H. | Anthem |
| 37 | 4/11/2011 | 8/16/2011 | J.H. | Anthem |
| 38 | 5/9/2011 | 10/2/2011 | J.H. | Anthem |
| 39 | 5/24/2011 | 8/20/2011 | J.H. | Anthem |
| 40 | 1/20/2011 | 8/11/2011 | F.H. | Medicaid |
| 41 | 2/17/2011 | 6/17/2011 | F.H. | Medicaid |
| 42 | 3/2/2011 | 6/12/2011 | F.H. | Medicaid |
| 43 | 3/17/2011 | 5/25/2011 | F.H. | Medicaid |
| 44 | 11/24/2010 | 8/20/2011 | J.L.H. | Anthem |
| 45 | 1/10/2011 | 8/21/2011 | J.L.H. | Anthem |
| 46 | 3/2/2011 | 8/25/2011 | J.L.H. | Anthem |
| 47 | 3/16/2011 | 8/23/2011 | J.L.H. | Anthem |
| 48 | 3/30/2011 | 8/16/2011 | J.L.H. | Anthem |
| 49 | 4/20/2011 | 8/24/2011 | J.L.H. | Anthem |
| 50 | 12/1/2010 | 8/20/2011 | H.J. | Anthem |
| 51 | 3/2/2011 | 8/25/2011 | H.J. | Anthem |

| 52 | 5/17/2011 | 8/16/2011 | H.J. | Anthem |
|---|---|---|---|---|
| 53 | 10/28/2010 | 9/1/2011 | J.H.J. | Anthem |
| 54 | 1/12/2011 | 8/21/2011 | J.H.J. | Anthem |
| 55 | 3/16/2011 | 8/26/2011 | J.H.J. | Anthem |
| 56 | 4/1/2011 | 9/26/2011 | J.H.J. | Anthem |
| 57 | 12/17/2010 | 10/23/2011 | S.K. | Medicaid |
| 58 | 3/18/2011 | 6/7/2011 | S.K. | Medicaid |
| 59 | 11/5/2010 | 8/31/2011 | N.K. | Anthem |
| 60 | 11/19/2010 | 8/20/2011 | N.K. | Anthem |
| 61 | 12/3/2010 | 8/21/2011 | N.K. | Anthem |
| 62 | 12/20/2010 | 9/4/2011 | N.K. | Anthem |
| 63 | 2/23/2011 | 7/4/2011 | E.K. | Medicare |
| 64 | 3/4/2011 | 7/27/2011 | E.K. | Medicare |
| 65 | 1/7/2011 | 6/14/2011 | M.L. | Medicaid |
| 66 | 1/28/2011 | 8/10/2011 | M.L. | Medicaid |
| 67 | 3/4/2011 | 6/10/2011 | M.L. | Medicaid |
| 68 | 4/1/2011 | 5/19/2011 | M.L. | Medicaid |
| 69 | 2/2/2011 | 9/25/2011 | I.M. | Anthem |
| 70 | 3/4/2011 | 9/16/2011 | I.M. | Anthem |
| 71 | 3/16/2011 | 8/23/2011 | I.M. | Anthem |
| 72 | 4/4/2011 | 9/23/2011 | I.M. | Anthem |
| 73 | 4/14/2011 | 8/19/2011 | I.M. | Anthem |
| 74 | 4/25/2011 | 8/17/2011 | I.M. | Anthem |
| 75 | 5/12/2011 | 8/18/2011 | I.M. | Anthem |
| 76 | 1/17/2011 | 8/11/2011 | J.M. | Medicaid |
| 77 | 2/17/2011 | 6/17/2011 | J.M. | Medicaid |
| 78 | 3/2/2011 | 6/12/2011 | J.M. | Medicaid |
| 79 | 3/14/2011 | 8/4/2011 | J.M. | Medicaid |
| 80 | 3/30/2011 | 5/17/2011 | J.M. | Medicaid |
| 81 | 4/27/2011 | 6/21/2011 | J.M. | Medicaid |
| 82 | 1/19/2011 | 8/10/2011 | J.S.M. | Bluegrass |
| 83 | 2/4/2011 | 8/12/2011 | J.S.M. | Bluegrass |
| 84 | 3/10/2011 | 7/6/2011 | J.S.M. | Bluegrass |
| 85 | 4/21/2011 | 6/19/2011 | J.S.M. | Bluegrass |
| 86 | 5/12/2011 | 7/7/2011 | J.S.M. | Bluegrass |
| 87 | 6/15/2011 | 7/26/2011 | J.S.M. | Bluegrass |
| 88 | 2/17/2011 | 9/16/2011 | M.R. | Anthem |
| 89 | 4/15/2011 | 8/19/2011 | M.R. | Anthem |
| 90 | 5/12/2011 | 8/16/2011 | M.R. | Anthem |
| 91 | 3/2/2011 | 6/17/2011 | R.S. | Bluegrass |

| 92  | 3/14/2011 | 7/7/2011  | R.S. | Bluegrass |
| --- | --- | --- | --- | --- |
| 93  | 3/25/2011 | 6/22/2011 | R.S. | Bluegrass |
| 94  | 12/4/2010 | 9/5/2011  | A.S. | Anthem |
| 95  | 1/29/2011 | 9/1/2011  | A.S. | Anthem |
| 96  | 3/5/2011  | 8/21/2011 | A.S. | Anthem |
| 97  | 4/2/2011  | 8/23/2011 | A.S. | Anthem |
| 98  | 4/23/2011 | 8/24/2011 | A.S. | Anthem |
| 99  | 5/7/2011  | 8/21/2011 | A.S. | Anthem |
| 100 | 6/4/2011  | 8/17/2011 | A.S. | Anthem |

Each count in violation of 18 U.S.C. §§ 1347 and 2.

## FORFEITURE

30. The allegations contained in Counts 1-100 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7).

31. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1349 and 1347 set forth in Counts 1-100 of this Indictment, the defendants, **ROBERT L. BERTRAM, JR., M.D., JAMES W. BOTTOM, ROBIN G. PEAVLER, M.D., BRIAN C. WALTERS, and BRYAN S. WOOD, M.D.**, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. 2461(c), and 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses. The property to be forfeited includes, but is not limited to, the following:

    a. The property located at 50 Peak View #114, Avon, Colorado 81620.

    b. A money judgment in the amount equal to the proceeds defendants
        **ROBERT L. BERTRAM, JR., M.D., JAMES W. BOTTOM, ROBIN**

G. PEAVLER, M.D., BRIAN C. WALTERS, and BRYAN S. WOOD, M.D., obtained as a result of such violations.

32. If any of the property described above, as a result of any act or omission of the defendants:

  a. cannot be located upon the exercise of due diligence;
  b. has been transferred or sold to, or deposited with, a third party;
  c. has been placed beyond the jurisdiction of the court;
  d. has been substantially diminished in value; or
  e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(7), and 28 U.S.C. § 2461(c).

**A TRUE BILL**

*[signature]*
**KERRY B. HARVEY**
**UNITED STATES ATTORNEY**

## PENALTIES

**COUNTS 1-100:**  Not more than 10 years imprisonment, $250,000 fine, and 3 years supervised release.

**PLUS:**  Mandatory special assessment of $100 per count.

**PLUS:**  Restitution, if applicable.

**PLUS:**  Forfeiture of listed items.